UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD HAYES ALBEE,

                                   NO. CIV. S-09-1145 LKK/EFB

          Plaintiff,

     v.
                                        O R D E R
CONTINENTAL TIRE NORTH
AMERICA, INC., An Ohio
Corporation, and FORD1
MOTOR COMPANY, INC., a
Delaware Corporation,


          Defendants.
_____/

     Plaintiff in this case asserts strict liability and negligence claims against defendants Ford Motor Company ("Ford") and Continental Tire North America ("CTNA"). The claims arise from an accident in which an after-market tire on the Ford Explorer that plaintiff was driving allegedly malfunctioned, resulting in a rollover accident in which plaintiff was severely injured. Defendant Ford Motor Company has filed a motion for summary judgment of the strict liability and negligence claims against it, or in the alternative for partial summary judgment. For the reasons

1

stated below, defendant Ford Motor Company's Motion is DENIED. Plaintiff has filed a motion for leave to amend the complaint to add Donald D. Albee as conservator for the person and estate of Donald Hayes Albee, and to eliminate the request for punitive damages. For the reasons stated below, the court GRANTS plaintiff's motion to amend the complaint. Additionally, defendant CTNA has filed two motions to exclude plaintiff's retained experts. The motions to exclude plaintiff's experts are DENIED. Defendant CTNA has filed a motion for sanctions, which the court GRANTS in part and DENIES in part.

## I. Background

On June 22, 2008, plaintiff Donald Albee alleges that he was driving his Ford Explorer ("the Explorer") when the left rear tire malfunctioned as a result of tread and/or belt separation. The Explorer then rolled over, causing severe injuries to Mr. Albee. Compl. at 3. The left rear tire on the Explorer was manufactured by Continental Tire North America. It was an "aftermarket" tire, meaning that it was installed on the Explorer after the Explorer left Ford's possession. Plaintiff alleges that the tire was defectively designed, and that negligent manufacturing practices were used by CTNA. Plaintiff also alleges that the Explorer was designed with defective handling characteristics, and that it had a propensity to roll over during foreseeable emergency situations. Plaintiff alleges "the defective design of the Explorer resulted in an unstable and uncontrollable vehicle during the tread separation event. Because of its lack of stability the vehicle

skated (fishtailed), which plaintiff could not control during the tread separation event, which resulted in the vehicle leaving the roadway and rolling over." Pl.'s Oppo at 5. Plaintiff also alleges that the defendants failed to warn users about the dangerous nature of the vehicle and the tire, and that safer alternative designs were available.

Ford Motor Company has filed a Motion for Summary Judgment on the claims against it, or in the alternative, for partial summary judgment. ECF No. 146.

## II. Standard for a Rule 56 Summary Judgment Motion

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First

1   Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

2   (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party

3   may not rely upon the denials of its pleadings, but must tender

4   evidence of specific facts in the form of affidavits and/or other

5   admissible materials in support of its contention that the dispute

6   exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.

7   at 289. In evaluating the evidence, the court draws all reasonable

8   inferences from the facts before it in favor of the opposing party.

9   Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,

10  Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme

11  v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

12  Nevertheless, it is the opposing party's obligation to produce a

13  factual predicate as a basis for such inferences. See Richards v.

14  Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The

15  opposing party "must do more than simply show that there is some

16  metaphysical doubt as to the material facts . . . . Where the

17  record taken as a whole could not lead a rational trier of fact to

18  find for the nonmoving party, there is no 'genuine issue for

19  trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

20                             **III. Analysis**

21  **A. Strict Liability under California Law**

22     Count Three of plaintiff's complaint is against Ford for

23  Strict Liability.[1] Plaintiff claims that the Explorer was defective

24  at the time that it left Ford's control in that it had defective

25

26      [1] Counts one and two are against CTNA, and are not the subject of the pending motion for summary judgment by Ford.

1  handling characteristics and that Ford failed to warn about the
2  dangers of the vehicle. Plaintiff claims that Ford was aware of the
3  defects and that safer alternative designs were available.
4  Defendant contends that plaintiff has not and cannot obtain
5  evidence that any defect was a substantial factor in causing
6  plaintiff's injuries. Specifically, the defendant claims that the
7  plaintiff's expert has stated that he had no opinion about whether
8  the vehicle's design was a substantial factor in causing
9  plaintiff's injuries. Def.'s Memo 4.

10     A federal court sitting in diversity jurisdiction applies
11  state law to product liability claims. Stilwell v. Smith & Nephew,
12  Inc., 482 F.3d 1187, 1193 (9th Cir. 2007). Under California law,

> a product may be found defective in design, so as to
> subject a manufacturer to strict liability for resulting
> injuries, under either of two alternative tests. First,
> a product may be found defective in design if the
> plaintiff establishes that the product failed to perform
> as safely as an ordinary consumer would expect when used
> in an intended or reasonably foreseeable manner. Second,
> a product may alternatively be found defective in design
> if the plaintiff demonstrates that the product's design
> proximately caused his injury and the defendant fails to
> establish, in light of the relevant factors, that, on
> balance, the benefits of the challenged design outweigh
> the risk of danger inherent in such design.

20  Barker v. Lull Engineering Co., 20 Cal. 3d 413, 432 (Cal. 1978).
21  See also Chambliss v. GMC, 108 F.3d 1176 (9th Cir. 1997); Lucas v.
22  City of Visalia, 2010 U.S. Dist. LEXIS 73649 (E.D. Cal. July 20,
23  2010)(Ishii). With respect to vehicles, manufacturers must take
24  into account the foreseeable risk that the vehicle will be involved
25  in an accident. "Thus, whatever the cause of an accident, a
26  vehicle's producer is liable for specific collision injuries that

5

1  would not have occurred but for a manufacturing or design defect
2  in the vehicle." <u>Soule v. General Motors Corp.</u>, 8 Cal. 4th 548, 560
3  (Cal. 1994). For a claim under the first prong of the <u>Barker</u> test,
4  expert testimony is unnecessary, since the test is based on
5  ordinary consumer expectations, and no expert can provide a jury
6  with useful testimony on that subject. <u>Id.</u> at 566.[2] Expert
7  testimony is appropriate, however, to weigh the costs and benefits
8  of a particular design under the second prong of <u>Barker</u>.

9      In this case, plaintiff's claim is that "the solid rear axle
10  of the Explorer experienced tramp[3] which resulted in skate during
11  the tread separation event. The tramp in the rear axle caused the
12  vehicle to become unstable, and to exhibit skate or oversteer; a
13  complete change from the normal characteristic of the Explorer."
14  Pl.'s Oppo. at 7. Plaintiff claims that safer alternative designs
15  were available, such as stiffer shocks or independent rear
16  suspension, in which the rear axle would not become unstable
17  following tread separation. To support this claim, plaintiff offers
18  the deposition testimony of Stephen Arndt, an expert in automotive
19  safety engineering. In his deposition, Mr. Arndt testified that
20  "the tramping motion [of the Explorer] causes a lack of traction
21  at the rear suspension that is above and beyond what you get with

22  _____

23      [2] That is not to say that an expert's testimony may not be
    admitted to explain the mechanism or dynamic leading to the failure
24  of expectations.

25      [3] Tramp is the phenomenon caused when "one tire is going up
    and the other one is going down and it goes back and forth up and
    down, up and down out of phase from left to right." Arndt Depo.
26  50:21-24.

1  just a pure tread separation." Deposition Transcript of S. Arndt

2  ("Arndt Depo.") 51:12-14. Mr. Arnt stated that it was his opinion

3  that the Explorer was defective "based on its axle tramp and

4  stability characteristics." <u>Id.</u> at 52:18-19. In essence,

5  plaintiff's argument is that following the tread separation, due

6  to the design of the rear axle, the Explorer's handling

7  characteristics changed in a way that caused the rollover accident.

8  Other design alternatives, for example, independent rear

9  suspension, would have prevented the tramping and related changes

10 to the handling characteristics.

11 **i. Defect**

12    Defendants assert that Mr. Arndt's testimony fails to

13 demonstrate that stability characteristics of the Explorer caused

14 the accident. Defs.'s Memo 4. To support its position, defendant

15 quotes a portion of Mr. Arndt's deposition testimony in which Mr.

16 Arndt answers "no" to the question, "So are you offering any

17 opinions as to the roll stability of the vehicle with respect to

18 this accident." Plaintiff argues, and the court agrees, that this

19 portion of the testimony is misleading and irrelevant to

20 plaintiff's claim when taken out of context. Plaintiff's claim is

21 that defective *handling* stability characteristics caused the

22 accident, not defective *roll* stability characteristics. Pl.'s Resp.

23 to the Statement of Undisputed Facts at ¶8. In his complaint,

24 plaintiff pled facts about Explorer's "propensity to roll over" and

25 its "defective handling characteristics." The court concludes that

26 there remains a genuine issue as to a material fact in this case,

7

that is, whether the Explorer had defective handling stability characteristics.

**ii. Causation**

Defendant argues that the tire de-tread was the cause of the accident, and not the design of the Explorer. Again, defendant excerpts a portion of the deposition testimony to support its position:

> "Q: Are you saying that the tire detread and the left rear position caused the loss of control in the subsequent rollover?
> A: It certainly – I guess 'caused.' It's the thing that starts the event as it unfolds . . .
> Q: [A]re you saying there that the [tire tread separation] caused the loss of control?
> A. In essence, yes, because . . . it starts it and you have a loss of control because that tire had a tread separation."

Ford's Memo at 5 (quoting Arndt Depo at 133:14-18). Defendant argues that this statement by the expert demonstrates the absence of genuine issue as to whether a defect in the Ford caused the accident. However, the expert's use of the word "cause" in the deposition testimony does not match the legal definition of 'cause' under California tort law. As the defendant correctly asserts, under California law, a defective product "causes" an injury when it is a "substantial factor in brining about" the injury. Rutherford v. Owens-Illinois, Inc. 16 Cal.4th 953, 968 (1997). Defendant is asking the court to treat the expert's statement–that the tire detread caused the accident--as a conclusion of law. This it cannot do. See Goodman v. Harris County, 571 F.3d 388, 399 (5th Cir. 2009)("An expert may never render conclusions of law.");

1  <u>Crayton v. Rossi</u>, 384 Fed. Appx. 330, 332-333 (5th Cir. 2010)

2  (noting that expert "affidavits setting forth ultimate or

3  conclusory facts and conclusions of law are insufficient to either

4  support or defeat a motion for summary judgment." (internal

5  citations omitted.)); <u>Cauthen v. Pacific Gas & Electric Co.</u>, 1990

6  U.S. App. LEXIS 21055 (9th Cir. Dec. 4, 1990)(". . . the conclusion

7  that Bigge caused the accident is a conclusion of law . . .[and is]

8  not a proper issue for expert testimony.") (unpublished). At other

9  points in Mr. Arndt's testimony, he describes the interaction of

10  the tire detread with specific characteristics of the Ford Explorer

11  that lead to instability and difficult handling of the vehicle. For

12  example, Mr. Arndt testified that in a 2002 Ford Explorer, "on top

13  of [lack of traction caused by the tread separation] you have this

14  characteristic of the tramping axle that further destabilizes the

15  vehicle at those highway speeds and makes an already difficult

16  situation for the driver to deal with." Arnt Depo at 51:14-20.

17  Later, Mr. Arndt testified that the solid rear axle design in the

18  Explorer is "an additive problem. It just makes a bad situation

19  worse." <u>Id.</u> at 84:22-23.

20      The defendant has not demonstrated a lack of genuine issue as

21  to the material fact whether the Ford's design was a substantial

22  factor in the accident that caused plaintiff's injuries.

23  **iii. Alternative Designs**

24      In his report, Mr. Arndt listed two alternative designs that

25  he testified would have reduced or eliminated the rear axle tramp

26  that contributed to the handling stability problems that allegedly

1  contributed to the rollover and plaintiff's injuries. "Rear axle

2  tramp . . . can be significantly reduced by using stiffer shock

3  absorbers such as the Ford replacement shocks provided for testing.

4  Rear axle tramp can be eliminated by using an independent rear

5  suspension such as that used in 2002 4-door Explorers." Report of

6  Stephen Arndt at 31 ("Arndt Report"), attached as Exhibit 1 to Dec.

7  of S. Arndt in Supp. of Pl.'s Oppo., ECF NO 158-3. In its motion

8  for summary judgment, defendant quotes Mr. Arnt's testimony and

9  then concludes that he "could not state with a reasonable degree

10  of probability that there would be no handling issues if the

11  vehicle had an independent rear suspension." Def.'s Memo 9:10-12.

12  However, the portion of the deposition testimony quoted only

13  demonstrates that Mr. Arnt could not say with a reasonable degree

14  of certainty that the same type of accident would not have occurred

15  in a vehicle with independent rear suspension "with the same speeds

16  and same detreading . . . [and] with the *same steering inputs*."

17  Arndt Depo. 83:2-11 (emphasis added). A central part of plaintiff's

18  claim is that the handling characteristics of the Explorer changed

19  so dramatically during the event that the driver responded by

20  steering the car in a way that was reasonable, but which

21  nonetheless caused the car to roll over. Plaintiff claims that the

22  driver's steering inputs would have been different had the handling

23  characteristics been different during the event. As the expert's

24  report summarizes:

25       "the degradation in the basic handling behavior of the
         Ford Explorer Sport is sudden and unexpected by the
26       driver. . . Mr. Albee was suddenly faced with a vehicle

1        that pulled to the left. Had Mr. Albee not responded to
     the pull to the left, his vehicle would have left its
2        lane. . . crossed over the other travel lates and struck
     the center median divider. Mr. Albee had no way of
3        knowing that his Ford Explorer Sport had fundamentally
     changed in the way it behaves as a result of the tread
4        detachment at the left rear wheel position . . . The
     fundamental changes in the Ford Explorer Sport's
5        behavior result in the vehicle loss of control when Mr.
     Albee countersteered back to the left in response to the
6        greater than anticipated rightward vehicle motion."

7   Arndt Report at 30. In a car with independent rear suspension,

8   the driver's steering inputs would not have been the same, so

9   Mr. Arndt's inability to conclude that the accident would not

10  have occurred if the same steering inputs were given in a

11  vehicle with independent rear suspension is irrelevant to

12  whether or not independent rear suspension would have been a

13  safer alternative design. A driver of a vehicle with independent

14  suspension would not have given the car the same steering inputs

15  that Mr. Albee did, since the driver would not have been

16  responding to the same conditions. To the contrary, Mr. Arndt's

17  report stated that independent suspension would have eliminated

18  the rear axle tramp that caused the handling problems that Mr.

19  Albee experienced. Additionally, Mr. Arndt stated that stiffer

20  shocks would have reduced the amount of tramp.

21       Accordingly, defendants have not shown that there is no

22  genuine issue as to the material fact of whether safer design

23  alternatives were available.

24  **B. Negligence**

25       As its fourth cause of action, plaintiff alleges that Ford

26  breached its duty of care by negligently designing the Explorer,

11

1  negligently testing or failing to test the Explorer, and

2  negligently failing to warn plaintiff of the defects. Defendant

3  argues that plaintiff has failed to establish that the Explorer

4  was defective, and therefore cannot establish that Ford was

5  negligent. In California, "a plaintiff in a products liability

6  case c[an] seek recovery at the same time on theories of strict

7  liability in tort and in negligence." *Jiminez v. Sears*, 4 Cal.

8  3d 379, 387 (1971). Defendant contends, citing <u>Montez v. Ford</u>

9  <u>Motor Co.</u>, 101 Cal App. 3d 315 (1980), that when the negligence

10 claim depends on the existence of a defect, failure to establish

11 that there is a defect necessarily results in failure of the

12 negligence claim. Here, plaintiff's claims for negligent design

13 and failure to warn do depend on the existence of a defect.

14 Because there remain several genuine issues as to material fact

15 with respect to the defective nature of the Ford explorer, as

16 discussed above, defendant is not entitled to summary judgment

17 on the negligence claim.

18 **C. Plaintiff's Motion for Leave to Amend**

19      On November 22, 2010, plaintiff filed a motion for leave to

20 amend the complaint to add Donald D. Albee as conservator for

21 the person and estate of Donald Hayes Albee, and to eliminate

22 the request for punitive damages. Defendant Ford Motor Company

23 has filed a statement of non-opposition. ECF No. 152. Defendant

24 Continental Tire North America ("CTNA") filed a response to the

25 motion. ECF No. 153. In its response, CTNA notes that the

26 proposed amended complaint filed with the instant motion

1   continues to state that plaintiff seeks punitive damages in the

2   prayer for relief. CTNA also objects to the continued inclusion

3   of factual allegations that, through discovery, they assert have

4   been shown to be without support.

5       Fed. R. Civ. Proc. 15(a)(2) directs the court to "freely

6   give leave when justice requires." Donald D. Albee is the father

7   and was appointed Conservator of Donald Hayes Albee's person and

8   estate on July 26, 2010, following a determination that Mr.

9   Albee lacked capacity to care for himself after the accident.

10  Neither defendant opposes amending the complaint to add Donald

11  D. Albee as a plaintiff. The court finds that it is in the

12  interest of justice to grant plaintiff leave to amend the

13  complaint to add Donald D. Albee as conservator for the person

14  and estate of Donald Hayes Albee as the plaintiff in this

15  action.

16      Likewise, neither party opposes plaintiff's request to

17  eliminate Count Five of the complaint, which is a claim for

18  punitive damages. The court finds that it is in the interest of

19  justice to grant plaintiff leave to amend the complaint to

20  eliminate Count Five, and directs plaintiff to eliminate any

21  other reference in the complaint to punitive damages.[4]

22  ////

23  _____

24      [4] The opposition to the amendment premised on a lack of
    evidence seems inappropriate, given the nature of the motion to
    amend.   That is not to say that a motion for summary judgment
25  (assuming that the particular defendant's interest is in issue)
    would not be appropriate.  In any event, further consideration at
26  pretrial may be warranted.

**D. Defendant CTNA's Motions to Exclude Plaintiff's Retained Experts**

Defendant CTNA has filed motions to exclude plaintiff's retained experts Troy Cottles and Ricky Alan Sarkisian, PH.D. The court has considered the motions to exclude and denies both motions.

**E. Sanctions against Plaintiff's Counsel**

Defendant CTNA seeks sanctions against plaintiff's counsel for the last-minute cancellation of an out-of-state deposition. Fed. R. Civ. P. 30(g)(1) states that a party may recover reasonable expenses, including attorney's fees, when the party noticing a deposition fails to attend and proceed with the deposition. See Detsch & Co. v. American Products Co., 141 F.2d 662 (9th Cir. 1944) (affirming an award of attorney's fees when the noticing party cancelled one of two scheduled depositions). On November 11, 2010, plaintiff served CTNA a Notice of Deposition of CTNA Representatives with the Most Knowledge of Certain Areas, scheduled for November 18, 2010 in Akron, Ohio. Decl. of A. Latiolait in Support of CTNA's Mot. for Sanctions ("Latiolait Decl."), Ex. G. The notice was for a deposition pursuant to Fed. R. Civ. P. 30(b)(6), which requires an organization that receives such a notice to designate one or more persons to testify about information known or reasonably available to the organization about the matter specified in the notice. The notice specified five areas of inquiry upon which the deposition would be taken. The notice also ordered CTNA to

1    produce certain documents related to those areas of inquiry, but

2    did not state that the deposition was contingent on the

3    production of those documents.[5] CTNA contends that it conducted

4    a good-faith search of responsive documents, found none, and

5    served a response stating so on November 16, 2010 via email.

6    Def.'s Mot. for Sanctions at 5. CTNA's counsel, Mr. Latiolait,

7    traveled to Akron on November 16, 2010 in anticipation of the

8    scheduled deposition on November 18. On November 17, 2010 at

9    6:21 PM, plaintiff's counsel sent an email to Mr. Latiolait

10   stating "I am cancelling the deposition as a futile act," citing

11   CTNA's response to the document request as the source of

12   futility. Latiolait Decl., Ex. C. Plaintiff's counsel did not

13   travel to Akron to initiate the deposition. Plaintiff argues

14   that he had previously requested the documents on numerous

15   occasions, including in notices for depositions scheduled prior

16   to a protective order issued by the magistrate judge on October

17   13, 2010. Plaintiff states several instances in which he

18   requested the documents, but does not assert that he sought to

19   enforce the request or that he communicated to CTNA that the

20   deposition was contingent on the production of documents.

21        The court concludes that an award of reasonable costs,

22   including attorney's fees is appropriate in this case. However,

23

24        [5]The November 11 notice was an amended notice of the
     deposition. The deposition was initially scheduled for May 25,
25   2010, but CTNA filed a motion for a protective order. A hearing was
     held before the magistrate judge, and the magistrate issued an
26   order on October 13, 2010, which narrowed the scope of the
     deposition.

1  CTNA has not provided sufficient detail to support the award

2  amount requested by defendant. See e.g., Shakey's, Inc. v.

3  Covalt, 704 F.2d 426, 436 (9th Cir. 1983)(affirming a fee award

4  when affidavits were submitted that itemized the work

5  performed). In his declaration, Mr. Latiolait stated "CTNA has

6  incurred reasonable attorney's fees of $5775 in connection with

7  travel to and from and preparation of the 30(b)(6) designee for

8  this deposition." Latiolait Decl. at 6. Additionally, Mr.

9  Latiolait stated that his hotel, airfare, and car rental

10 expenses were $950.65. CTNA is ORDERED to submit, within ten

11 (10) days of the issuance of this order, an affidavit that

12 itemizes the costs and fees requested. The affidavit shall state

13 the number of hours worked on each task, the hourly rate of each

14 person working on each task, and a showing that the hourly rates

15 claimed are justified.  Plaintiff may file a response ten (10)

16 days thereafter.

17                          **IV. Conclusion**

18      For the foregoing reasons, the court ORDERS as follows:

19           [1] Defendant Ford Motor Company's Motion for Summary

20           Judgment or in the Alternative for Partial Summary

21           Judgment, ECF No. 146 is DENIED.

22           [2] Plaintiff's Motion to Amend the Complaint, ECF No.

23           147, is GRANTED.

24           [3] Defendant's CTNA's motions to exclude plaintiff's

25           retained experts, ECF No. 148 and 149, are DENIED.

26           [4] Defendant CTNA's motion for sanctions, ECF No. 165

                                16

1        is GRANTED in part and DENIED in part. Defendant CTNA

2        is ORDERED, within fourteen (14) days of the issuance

3        of this order, to file with the court an affidavit in

4        support of its motion for sanctions that complies with

5        this order. Within fourteen (14) days of the filing of

6        defendant's affidavit, plaintiff shall file a response

7        indicating whether it objects to the amount requested

8        by defendant, and providing an explanation for the

9        objection.

10   IT IS SO ORDERED.

11   DATED:  January 21, 2011.

12

13

14                              LAWRENCE K. KARLTON

15                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26