Robert Gray Williams, Esq., #068033
PEREZ, WILLIAMS, MEDINA & RODRIGUEZ
1432 Divisadero
Fresno, California 93721
Telephone:   (559) 445-0123
Facsimile:   (559) 265-4509

W. Randolph Barnhart, Esq., Colorado Bar #5186
W. RANDOLPH BARNHART, PC
50 S. Steele St., Ste. 500
Denver, Colorado 80209
Telephone:   (303) 377-6700
Facsimile:   (303) 377-6705

ATTORNEYS FOR PLAINTIFF, Donald D. Albee, as Conservator for the Person and Estate of DONALD HAYES ALBEE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donald D. Albee, as Conservator for the Person and Estate of DONALD HAYES ALBEE,<br><br>   Plaintiff,<br><br>v.<br><br>CONTINENTAL TIRE NORTH AMERICA, INC., An Ohio Corporation, and FORD MOTOR COMPANY, INC., a Delaware Corporation,<br><br>   Defendants. | CASE NO. 2:09-CV-01145-LKK-EFB<br><br>PLAINTIFF'S FIRST AMENDED COMPLAINT FOR STRICT LIABILITY AND NEGLIGENCE<br><br>DEMAND FOR JURY |

COMES NOW the Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, and for his Complaint against the Defendants, states as follows:

1.   Jurisdiction is founded on diversity of citizenship.  Plaintiff is a citizen of California. The conservator is a citizen of Alabama. The Defendants are corporations incorporated with principal places of business outside the State of California.  The matter in

First Amended Complaint – Page 1

controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

2. At all times material hereto, Defendant Continental Tire North America (hereinafter "CTNA"), Inc. was and is an Ohio corporation with its principal place of business in North Carolina.

3. Defendant CTNA is licensed to do business in the State of California. CTNA does business in the State of California by advertising and selling its products in the jurisdiction.

4. CTNA designed, developed, tested, manufactured and distributed the General tire which is the subject of this litigation.

5. At all times material hereto, Defendant Ford Motor Company (hereinafter "Ford") was and is a Delaware corporation with its principal offices in Dearborn, Michigan.

6. Ford Motor Company, Inc. ("Ford") is a foreign corporation licensed to do business in the State of California. Ford does business in the State of California by advertising and selling its products in this jurisdiction.

7. Ford designed, developed, tested, manufactured and distributed the 2002 Ford Explorer SLV, Vehicle Identification Number 1FMYU60E12UD51240 ("the subject vehicle").

8. On June 22, 2008 Donald Hayes Albee was operating the subject Ford Explorer traveling in San Joaquin County California when the left rear General Ameritrac SUV 235/70/R16 tire bearing DOT number A3083JA2803 (hereinafter "tire" or "subject tire") catastrophically malfunctioned as a result of a tread and/or belt separation. Following the tread and/or belt separation, the Ford Explorer went out of control and rolled over, resulting in severe injuries to Mr. Albee.

9. At all times up until the moment of the tire separation, the subject Explorer and the subject tire were properly maintained and were used in normal operation and in a manner foreseeable, expected, intended, marketed, and promoted, and foreseeable by Ford. The subject tire

First Amended Complaint – Page 2

malfunctioned in the absence of any adverse outside conditions, road hazards or interference from any other vehicle or obstruction, and while being used in the normal and foreseeable manner.

10. The defective and negligent design of the subject tire included, but was not limited to the following design defects:

    a. Inadequate consideration of the ambient temperatures to which the tire would be subjected in ordinary road operation in the southern United States;

    b. Inadequate margin of safety to prevent tread or belt separation in ordinary road operations or expected in anticipated road conditions;

    c. Inadequately sized or improperly engineered belt wedges;

    d. The unnecessary use of fillers, inappropriate liner compounds or other material in innerliner stock compounds;

    e. The utilization of improper compounds, designed to save costs at the expense of adequate adhesion in the ply stocks, belt stocks and tread base stocks;

    f. Inadequate design of the shoulder pockets;

    g. The utilization of tread compounds with a useful life greater than the ability of the other tire structures to adhere;

    h. The failure to incorporate in the design of the tire a nylon overbelt or cap or strip to inhibit belt/belt separations;

    i. The use of cord and steel plies of inadequate rubber coating and thickness;

    j. The failure to use adequate amounts of anti-ozonants and anti-oxidants in the belt skin compound;

    k. The use of inadequate wire configurations in the steel belts; and

    l. The reduction of the costs of materials pursuant to a vigorous cost reduction program so as to render the tire unsafe.

11. The negligent manufacturing practices employed by CTNA at its plant included, but were not limited to:

    a. Inadequate inspections at all phases of the tire production, including final inspection and inadequate training of the inspection personnel;

    b. The curtailment or elimination of the use of x-ray technology as part of the inspection process;

    c. The failure to follow company-mandated rules and regulations relating to tire quality and good manufacturing practices;

    d. The elimination or curtailment of quality assurance and quality control standards in the manufacture of the tire;

    e. The use of dry stock in building tires sold to the general public;

    f. The excessive and dangerous use of solvents to increase stickiness or tack in dry stock during the building process of tires;

    g. The failure to test the effects of solvent use on adhesion systems in tire building;

    h. The failure to maintain temperature and humidity control in critical tire building operations;

    i. The utilization of scrap or rejected stocks for materials in building tires for sale to the general public;

    j. The overheating or burning of innerliner stock during the curing process in the production of tires for sale to the general public;

    k. The use of awls to eliminate blisters or bubbles in innerliners of finished tires thereby producing finished tires with holes through the tread, belts and plies;

    l.  The production of ply in belt sheets with inadequate rubber coverage or coating;

    m.  The improper use of a work-away system for rejected materials;

    n.  The stretching of improperly cut ply or belt sheets through the use of solvents;

    o.  The misalignment of belts and plies in the construction of tires;

    p.  Permitting contaminants, including but not limited to, paraffinic waxes to be built into tires thereby destroying proper adhesion;

    q.  The failure to test the effects of processing oils or aids on adhesion systems; and

    r.  Use of antiquated or improper tire-building equipment or curing presses.

  12.  The Explorer designed, manufactured, constructed and assembled by Defendant Ford was defective at the time the vehicle left Defendant Ford=s control due to the vehicle=s propensity to rollover during foreseeable emergency situations and also, due to its defective handling characteristics.  Likewise, the Explorer lacked appropriate and sufficient warnings about the risks, dangers and harms presented by the vehicle.  Safer alternative designs were available which would not have substantially impaired the utility of the vehicle.  Plaintiff avers on information and belief that some time before the manufacture of the subject vehicle, Ford and its engineers and managers became aware that the suspension on the Ford Explorer was inadequate and dangerous, particularly in an emergency steering situation.  Despite that knowledge, Ford made a decision to manufacture the subject vehicle with inadequate and dangerous suspension components.

  13.  Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, avers on information and belief that after the subject vehicle was manufactured, but before the date of the accident at issue herein, Ford began selling properly designed shock absorbers as replacement parts for Ford Explorers.  Ford did not advise or warn Explorer owners

First Amended Complaint – Page 5

such as Plaintiff that he needed to replace the shock absorbers on his Explorer and failed to warn him of the dangers and consequences of continuing to operate his Explorer with the original equipment shock absorbers.

14. The Defendants' acts and omissions were direct, proximate and producing causes of Plaintiff's injuries, damages, and losses. These injuries, damages and losses include, but are not limited to, general and special damages for physical, neurological and mental injuries, past and future disability, past and future permanent impairment, past and future medical, hospital and rehabilitation expenses, past and future lost wages, past and future loss of earning capacity, past and future pain and suffering and emotional distress, and any other general, special, and compensatory damages permitted by law.

15. Venue is proper in that the subject accident occurred in the Eastern District of California.

COUNT ONE
<u>STRICT LIABILITY - CTNA</u>

16. Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, realleges, reasserts and reaffirms the paragraphs 1 through 15.

17. At all times relevant, CTNA was engaged in the business of designing, manufacturing, constructing, selling and distributing tires for use on automobiles, including the subject tire mounted on the Ford Explorer involved in this accident.

18. On June 22, 2008 the General tire on the vehicle in which Donald Albee was traveling was in a condition in which it could have been expected to be given its use.

19. The defects in design, manufacture and inspection, and the absence of warning, made the tire unreasonably dangerous, unfit and unsafe for its intended use and caused the tire to fail to perform as an ordinary user would expect when the tire was used in its intended and foreseeable manner.

20. The tire was manufactured by CTNA without adequate quality control measures and using inappropriate manufacturing procedures and processes as set out above. Such inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-service failure of the tire.

21. The tire was defective in manufacture including, but not limited to, lack of proper adhesion of the steel belts to the surrounding material resulting in tread, belt separation and catastrophic failure during normal use.

22. The tire was defective in design including, but not limited to, failure to incorporate designs to reduce or eliminate the hazard of tread/belt separation.

23. CTNA failed to recall the tire or warn the Plaintiff in a timely manner of the risk of injury of which it was actually aware, or should have been aware, through the exercise of ordinary care. The failure to warn was itself a product defect.

24. The defects in the design, manufacture, inspection and the lack of warning were direct, proximate and producing causes of the accident and vehicle rollover on June 22, 2008 and as a result Plaintiff suffered injuries, damages and losses, previously described.

WHEREFORE, Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, prays for an award of compensatory damages against CTNA to be fixed by the trier of fact in a reasonable amount.

COUNT TWO

NEGLIGENCE - CTNA

25. Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, realleges, reasserts and reaffirms the above paragraphs 1 through 24.

26. At all times material hereto, CTNA had a duty to use reasonable care in the design, manufacture, inspection and sale of the subject tire.

27. CTNA breached its duty of reasonable care owed to Plaintiff by:

   a. Negligently designing the subject tire;

   b. Negligently constructing the subject tire;

   c. Negligently manufacturing the subject tire;

   d. Negligently testing or failing to test the line of tires;

   e. Negligently inspecting or failing to inspect the subject tire for defects;

   f. Negligently failing to warn Plaintiff of defects in the subject tire which CTNA either knew or should have known existed; and

   g. Failing to warn the Plaintiff of the warning signs of tread and belt separation and the consequences thereof.

28. As a direct and proximate result of the negligence of CTNA, Plaintiff suffered injuries, damages and losses, previously described.

WHEREFORE, Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, prays for an award for compensatory against CTNA to be fixed by the trier of fact in a reasonable amount.

COUNT THREE
STRICT LIABILITY - FORD

29. Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, realleges, reasserts and reaffirms the above paragraphs 1 through 28.

30. At all times relevant hereto, Ford was in the business of designing, testing, approving, manufacturing, marketing, distributing, selling and supplying motor vehicles, including the Explorer.

31. On June 22, 2008 the Ford Explorer involved in this incident was in substantially the same condition as when it was originally sold.

First Amended Complaint – Page 8

32. The Explorer designed, manufactured, constructed and assembled by Defendant Ford was defective at the time the vehicle left Defendant Ford's control due to the vehicle's propensity to rollover during foreseeable emergency situations and also, due to its defective handling characteristics. Likewise, the Explorer lacked appropriate and sufficient warnings about the risks, dangers and harms presented by the vehicle. Safer alternative designs were available which would not have substantially impaired the utility of the vehicle.

33. The defective condition was present and existed at the time Ford placed their defective product into the stream of commerce with knowledge of the defective condition.

34. The Explorer was defective as marketed in that the advertising and marketing campaigns and programs undertaken by Ford misled consumers as to the handling, maneuverability, stability, and safety features of the Ford Explorer and failed to warn consumers of the dangerous conditions inherent in the design of the Ford Explorer as described herein, including propensity to rollover and lack of appropriate handling characteristics.

35. Defendant Ford failed to recall or warn about the dangers of the Explorer in a timely manner even though it was aware of the risk of injury or death, or should have been aware, through the exercise of ordinary care.

36. As a direct and proximate result of the defects in design, manufacture, warning and inspection of the Ford Explorer, Plaintiff suffered injuries, damages, and losses, previously described.

WHEREFORE, Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, prays for an award of compensatory damages against Ford to be fixed by the trier of fact in a reasonable amount.

## COUNT FOUR
## NEGLIGENCE – FORD

37. Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, realleges, reasserts and reaffirms the above paragraphs 1 through 36.

38. Defendant Ford, as the manufacturer of the Ford Explorer, was under a duty to exercise ordinary care in the design of its product used by Donald Hayes Albee.

39. Ford's acts of negligence include, but are not limited to, the following:

   a. Negligently designing the Explorer;

   b. Negligently testing or failing to test the Explorer;

   c. Negligently failing to follow the advice and recommendations of its own engineers about design changes to the Explorer;

   d. Negligently failing to warn Plaintiff of defects in the Explorer which Ford either knew or should have known existed;

   e. Negligently failing to warn the Plaintiff of the risks and consequences of having a sudden tire disablement, including a tread/belt separation, at highway speed in a Ford Explorer; and

   f. The factual basis for Ford's negligence is further specified in Count Three.

40. As a direct and proximate result of the negligence of Defendant Ford, Plaintiff suffered injuries, damages and losses, previously described.

WHEREFORE, Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, prays for an award of compensatory damages against Ford to be fixed by the trier of fact in a reasonable amount.

### DEMAND FOR JURY

Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, hereby demands a jury trial on all factual issues in his Complaint.

PREJUDGMENT INTEREST

The above and foregoing acts and/or omissions of Defendants have caused damages to Plaintiff, entitling him to prejudgment interest on the damages sustained.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, prays that Defendants be cited to appear and answer herein, that after final trial hereon Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, recover of and from Defendants for his injuries, damages and losses described above, costs of suit, prejudgment and postjudgment interest, and for such other and further relief to which Plaintiff, Donald D. Albee, as Conservator of the Person and Estate of DONALD HAYES ALBEE, may show he is justly entitled.

Respectfully submitted,

PEREZ, WILLIAMS, MEDINA & RODRIGUEZ

/s/Robert Gray Williams
Robert Gray Williams, #068033
1432 Divisadero
Fresno, California  93721
(559) 445-0123 Office
(559) 265-4509 (Fax)